1  JAMES  HAWKINS, APLC
   JAMES R. HAWKINS, SBN 192925
2  SEAN SASAN VAHDAT, SBN 239080
   9880 Research Drive, Suite 200
3  Irvine, CA 92618
   Tel:  949.387-7200
4  Fax:  949.387-6676
   james@jameshawkinsaplc.com
5  sean@vahdatlaw.com

6  Attorneys for Plaintiff
   MICHAEL SANDOVAL
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12

13  MICHAEL SANDOVAL, on behalf of        Case No. 4:10-cv-05824-PJH
    himself and all others similarly
14  situated,                             The Honorable Phyllis J. Hamilton

15              Plaintiffs,               <u>CLASS ACTION</u>

16                                        MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN SUPPORT OF
17        v.                              MOTION FOR PRELIMINARY
                                          APPROVAL OF SETTLEMENT OF
18                                        CLASS ACTION CLAIMS

19  LUXOTTICA RETAIL NORTH                <u>**ACCOMPANYING PLEADINGS:**</u>
    AMERICA, an Ohio Corporation;         NOTICE OF MOTION;
20  doing business as (d.b.a.),           DECLARATION OF JAMES R.
    LENSCRAFTERS, and DOES 1              HAWKINS; [PROPOSED] ORDER
21  through 100, inclusive,               GRANTING MOTION FOR
                                          PRELIMINARY APPROVAL OF
22                                        SETTLEMENT OF CLASS ACTION
                Defendants.               CLAIMS;
23
                                          Date: July 27, 2011
24                                        Time: 9:00 a.m.
                                          Courtroom: 3
25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS  ACTION

# TABLE OF CONTENTS

I.      INTRODUCTION…………………………….….…….5

II.     BACKGROUND TO SETTLEMENT ……………………………….7

III.    SUMMARY OF SETTLEMENT TERMS………………..…………...9

A.      THE SETTLEMENT CLASS…………………………………....9

B.      THE MAXIMUM SETTLEMENT AMOUNT……….……………...9

C.      ALLOCATION FORMULA FOR THE NET SETTLEMENT AMOUNT..10

D.      THE RELEASE OF CLAIMS.…………………………………..11

E.      THE CLASS NOTICE.………………………………………..11

F.      OBJECTIONS AND OPT-OUT PROCESS………………….…… 12

IV.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL………....12

A.      THE SETTLEMENT REACHED MERITS CLASS TREATMENT……...14

1.      NUMEROSITY……………………………………….……14

2.      COMMONALITY………………………………….………15

3.      TYPICALITY………………………………………...15

4.      ADEQUATE REPRESENTATION……………………………15

5.      PREDOMINANCE OF COMMON QUESTIONS……………………16

6.      SUPERIORITY……………………………………………16

B.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE…...17

1.      THE RISK INHERENT IN CONTINUED LITIGATION ARE GREAT..19

2.      THE AMOUNT OFFERED IN SETTLEMENT SUPPORTS APPROVAL.............................................................19

3.      DISCOVERY SUPPORTS APPROVAL………………….…………20

4.      EARLY PAYMENT SUPPORTS APPROVAL...………………….……20

5.      THE FAIRNESS OF THE DISTRIBUTION  SUPPORTS APPROVAL...21

C.      CLASS NOTICE/SETTLEMENT SHARE/ELECTION NOT TO PARTICIPATE ......................................…..21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

V.     FINAL APPROVAL HEARING AND FURTHER SCHEDULING…….20

VI.    CONCLUSION…………………………………………………... 21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

# TABLE OF AUTHORITIES

**Federal Cases**

*Amchem prods. Inc. v. Woodward, 521 U.S. 591, 620 (1997)* ...............................17

*Blackie v. Barrack, 524 F.2d 891, 901 (9th Circuit 1975)* .......................................14

*Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Circuit 1992)* ............13

*Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Circuit 1998)* .....................13

*Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Circuit 1964)* ...............................................................................................15

*In re General Motors Corp., 55 F.3d 768, 806 (3d Cir. 1995)* ..............................17

*In re Micahel Milken & Assocs. Sec. Litig., 150 F.R.D. 57, 60 (S.D.N.Y. 1993)* ...............................................................................................................23

*Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Circuit 1998)* ............18

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc. 244 F.3d 1152, 1162 (9th Circuit 2001)* .......................................................16

*Mendoza v. United States, 623 F.2d 1338, 1351 (9th Cir. 1980)* ..........................23

*Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)* ..............22

*Officers for justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 625 (9th Circuit)….* ...................................................................................................18

*Phillips Petroleum co. v. Shutts, 472 U.S. 797, 809 (1985)* .................................17

*Stanton v. Boeing Co., 327 F.3d 938, 952 (9th Circuit 2003)*....………………….13, 17

*Silber v. Mabon, 18 F. 3d 1449, 1454 (9th Cir. 1994)* ...........................................22

*Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Circuit. 1993)* ...........14

*Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950, (9th Circuit 1976)*................13

*Zinser v. Accufix Research Inst., Inc., 253, F.3d 1188, 1189, amended, 273 F.3d 1266       (9th Circuit 2001)* .......................................................................16

**California Cases**

*Acosta v. Trans Union LLC, 243 F.R.D. 377, 383 (C.D. CAL. 2007)* ....................14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

*Baldwin & Flynn v. Nat'l Safety Assocs.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993). ........................................................................................................... 14

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979) ..................... 19

*Errecas v. Superior Court*, 19 Cal.App.4th 1475, 1487 ........................................... 13

*Linney v. Cellular Alaska p'ship, supra* 151 F.3d 1234, 1242 ................................ 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

I.

## INTRODUCTION

Plaintiff MICHAEL SANDOVAL, ("Named Plaintiff") individually and on behalf of all persons similarly situated ("Plaintiffs"), and Defendant LUXOTTICA RETAIL NORTH AMERICA INC. , an Ohio corporation ("LRNA"),  hereinafter refered to as "Defendant" have reached a full and final settlement of the above-captioned action, which is set forth in the Settlement Agreement filed herewith as Exhibit A to the Declaration of James R. Hawkins.  By this motion, Plaintiffs and Defendant respectfully seek an order (1) conditionally certifying the Settlement Class and granting preliminary approval of the Settlement; (2) approving the Class Notice and Exclusion Form: (3) appointing Simpluris, Inc to act as the Settlement Administrator; (4) appointing Michael Sandoval as the named representative; (5) appointing James Hawkins APLC as class counsel; and (6) scheduling a Final Approval Hearing.  As consideration for this Settlement, Defendant shall pay a common fund equal to Seventy Thousand Dollars ($70,000.00), which shall include all payments to Settlement Class members, as well as Class Counsels' attorneys' fees and costs, incentive awards for the Class Representative, PAGA payment, and the costs of class notice and claims administration.  The Settlement is non-reversionary and any unclaimed amount will not revert to Defendant.  This Settlement is an outstanding result for the Settlement Class Members in light of the serious issues regarding the merits of their claims, particulary the applicability of the administrative exemption.  Moreover, this Settlement is consistent with the settlement approved by this Court in the nearly identical case, *Martinez v. Lenscrafters, Inc.*, Case No. C-08-01699 PJH ("*Martinez*").

///

///

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

## II.

## BACKGROUND TO SETTLEMENT

Named Plaintiff filed the present class action on October 6, 2010 in Alameda Superior Court against Defendant.  The case was removed to the federal Northern District of California, and was assigned to Judge Phyllis Hamilton's court.  In the Complaint, Named Plaintiff alleges that because Defendant purportedly misclassified its Retail Managers, (1) it failed to pay them overtime in alleged violation of Labor Code sections 510 and 1194; (2) failed to timely pay wages due at termination in violation of Labor Code sections 201, 202 and 203; (3)  failed to comply with itemized employee wage statement provisions in violation of Labor Code sections 226, 1174, and 1175; (4) failed to provide rest and meal breaks or compensation in lieu of in violation of Labor Code sections 226.7 and 512, and Wage Order 7; and (5) violated the Unfair Competition Law ("UCL") set forth at California Business and Professions Code section 17200 *et seq*.  (Hawkins Decl., ¶2).

Plaintiff's action follows this Court's approval of class action settlement in *Martinez*.  The settlement class in *Martinez* included Retail Managers through August 1, 2009.  Identical to this action, plaintiff in *Martinez* alleged that Defendant misclassified its Retail Managers as exempt.  As part of the *Martinez* settlement, settlement class members (which included all but three of Defendant's Retail Managers who opted out of the settlement) released all claims related to plaintiff's misclassification theory.

Defendant denies that it engaged in any misconduct in connection with its wage-and-hour practices, and further denies that it has any liability or engaged in wrongdoing of any kind associated with the claims alleged in the Action by the Named Plaintiff or any Class Member.  Defendant contends, among other things, that its California store managers were properly classified as exempt employees throughout the Class Period.  Defendant further contends that it at all times

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

1   complied with all state wage-and-hour laws in connection with the employment of

2   Named Plaintiff and the Class.  (Hawkins Decl., ¶3).

3        Class Counsel has engaged in a detailed review of this case, as well as

4   various prior settlements affecting Class Members.  Class Counsel is of the opinion

5   that the Settlement documented by this Agreement is fair, reasonable, and adequate,

6   and in the best interest of the Class in light of all known facts and circumstances,

7   including the significant diminution of the potential liability in light of the fact that

8   numerous potential Class Members, including the Named Plaintiff, signed release

9   agreements as part of settlements of different class actions which arguably preclude

10  their recovery in this action,[1] the risk posed by current economic conditions, the

11  risk of significant delay, the risk the Settlement Class will not be certified by the

12  court or that it will later be decertified, the defenses asserted by Defendant, and the

13  numerous  potential  appellate  issues.    (Hawkins  Decl.  ¶¶  4-5.)    Moreover,  the

14  amount of the Settlement (which covers a Class Period of approximately one year[2])

15  is proportionate to the portion of the settlement allocated to Retail Managers that

16  was approved by this Court in *Martinez* (*i.e.*, 60 percent of $400,000 settlement,

17  which covered a period of 3.42 years).  (Hawkins Decl., ¶5). While Defendant

18  specifically denies any liability in the Action, Defendant has agreed to enter into

19  this settlement to avoid the uncertainty, cost and business disruption associated with

20  defending the Action.  (Hawkins Decl., ¶ 5).

22        Through the present motion, Plaintiff is seeking Preliminary Approval of the

---

[1] In addition to releases arising from the settlement  in *Martinez*, many putative class members are also subject to releases from the class action settlement in *Danayan v,. LensCrafters, Inc.* Los Angeles Superior Court Case No.  BC409412. ("*Danayan*"), which included a release of claims for penalties.

[2] The Class Period is limited to approximately one year because the *Martinez* settlement released all claims through August 1, 2009 and Defendant reclassified its Retail Managers as overtime eligible in August 2010.  (Hawkins Decl. ¶ 5.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

1   Stipulation and Settlement Agreement of Class Action Claims.  Preliminary

2   Approval should be granted so long as the proposed settlement is within the range

3   of possible approval.  The final fairness hearing will provide the Court the

4   opportunity to review the Settlement with the benefit of Class Member input.

5        The parties here have made the showing necessary for preliminary approval

6   as more fully detailed below.  The proposed Settlement was reached through arms-

7   length bargaining with the assistance and considerable involvement of both

8   experienced counsel.  The proposed Settlement will result in financial benefit to

9   participating claimants, particularly in light of Defendant's defenses to the claims

10  asserted.  The proposed notice to the Class is more than adequate under the relevant

11  standards.

12       Plaintiff Sandoval, now moves for preliminary approval of the Settlement

13  pursuant to Federal Rule of Civil Procedure 23(e).

14

15                              **III.**

16                **SUMMARY OF SETTLEMENT TERMS**

17

18  **A.      The Settlement Class**

19       The "Class Members" (also referred to as the "Settlement Class") consist of

20  the Named Plaintiff and all employees of Defendant who were employed in

21  California as Retail Managers at any time during the Class Period.  The "Class

22  Period" is defined as the period beginning on August 2, 2009 and ending on August

23  31, 2010.  All class members will be included in the class exempt those who

24  properly exclude themselves from this settlements.  The parties estimate that there

25  are approximately 150 total Class Members.  (Hawkins Decl., ¶ 6).

26

27  **B.      The Maximum Settlement Amount**

28       The proposed settlement provides that Defendant will pay a Gross Settlement

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

1   Amount of  Seventy Thousand Dollars ($70,000.)  (Hawkins Decl. ¶7).  This

2   payment is the total amout that Defendant will pay in this Settlement and will cover

3   all components of the Settlement, including Settlement Payments to to Plaintiff

4   Class Members (i.e., Class Members who do not exclude themselves from this

5   Action); a One Thousand Dollar ($1,000.00) payment to the California Labor and

6   Workforce Development Agency ("LWDA") for its share of the Settlement of civil

7   penalties; the Settlement Administrator's reasonable fees and expenses of Eight

8   Thousand Five Hundred Dollars ($8,500.00); and (subject to court approval) the

9   Class Representative Payment to Named Plaintiff, in addition to his Settlement

10  Payment, of Two Thousand Dollars ($2,000.00) in compensation of his services as

11  Class Representative, and payments to Class Counsel of Twenty Five Percent

12  (25%) or Seventeen Thousand Five Hundered Dollars ($17,500.00) for their

13  reasonable attorneys' fees and for reasonable costs incurred in litigating this Action.

14  There will be no reversion of the Gross Settlement Payment to Defendant.

15  (Hawkins Decl., ¶8).

16

17  **C.**     **Allocation Formula For The Net Settlement Amount**

18          After the above amounts for the the LWDA, Settlement Administrator's

19  reasonable fees and expenses, the Class Representative Enhancement, and

20  attorneys' fees and costs are deducted from the Gross Settlement Amount, the

21  remainder (the "Net Settlement Amount" or "NSA")will be distributed as

22  Settlement Payments to all Plainitff Class Members based upon the following

23  allocation formula:

24              a. A per Eligible Week rate of pay will be determined by dividing the

25              NSA by the total number of Eligible Weeks for all Settlement Class

26              Members.  Each Plaintiff Class Member's Settlement Payment shall be

27              calculated as the Eligible Week rate multiplied by his/her number of

28              Eligible Weeks.  (Settlement Agreement ¶41(e); Hawkins Decl., ¶9).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

1

2    b. The remainder of the NSA after the payments, if any, shall revert to

3    the OneSight Foundation.   Any settlement check returned as

4    undeliverable and those settlement checks remaining uncashed for

5    more than 120 days after issuance will escheat to the State of

6    California Controller's office for the benefit of the Plaintiff Class

7    Member.   Defendant will fully discharge its obligations to those

8    Plaintiff Class Members to whom they will pay settlement checks

9    regardless of whether the settlement checks are actually received

10   and/or negotiated by Plaintiff Class Members.  (Settlement Agreement

11   ¶41(f); Hawkins Decl., ¶10).

12

13   **D.** **The Release of Claims**

14   In return for these payments, Plaintiff, Plaintiff Class Members and Class

15   Counsel will grant Defendant and all their former, present and future parent

16   companies, subsidiaries, divisions, concepts, related or affiliated companies,

17   shareholders, officers, directors, employees, agents, attorneys, insurers,

18   predecessors, successors and assigns, and any individual or entity which could be

19   liable to any member of the Settlement Class for any of the Claims as defined in the

20   Settlement (collectively, the "Released Parties") a complete release of all "Released

21   Claims" as defined in Paragraph 38 through 40 of the Settlement, which will be

22   ordered by the Court by way of its judgment of dismissal.  (Hawkins Decl., ¶11).

23   In addition to the above, the Class Representative's Released Claims include

24   a General Release of all claims and unknown claims.  (Settlement Agreement ¶39

25   (b); Hawkins Decl., ¶12).

26

27   **E.** **The Class Notice**

28   All Settlement Class Members will be given due notice of the Settlement and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

the opportunity to be a class member, opt out or object to the Settlement. (Proposed Form of Notice, Exhibit 2 attached to Hawkins Decl.)  Pursuant to the Settlement, all costs associated with providing notice and administering the Class Settlement will be paid out of the Gross Settlement Amount.  The Parties agreed to use third party Settlement Administrator, Simpluris, Inc., to disseminate the Notice and handle all claims administration.  Simpluris, Inc. is not expected to charge more than $8,500 for all of its services and costs.  All other terms and conditions of the Settlement are set forth in the parties' Settlement.   (Settlement Agreement ¶44; Hawkins Decl., ¶ 13).

## F.    Objections and Opt-Out Process

Any Settlement Class Member who so wishes may object to or comment on the Settlement; or elect not to participate in the Settlement.  Any such objection must be filed with the clerk of the court and served on all counsel by the close of the Opt-Out Period, not later than 45 days after the Settlement Adminstrator mails the Class Notice Packet.  (Settlement Agreement ¶46; Hawkins Decl., ¶14).

Settlement Class Members who wish to exclude themselves from the Settlement must mail to the Settlement Administrator not later than 45 days after the Settlement Administrator mails the Class Notice Packets a written and signed opt-out request.  (Settlement Agreement ¶45; Hawkins Decl., ¶15).

## IV.

## THE SETTLEMENT MERITS PRELIMINARY APPROVAL

Pursuant to Rule 23 of the Federal Rules of Civil Procedure,[3] the Settlement

---

[3] All statutory citations refer to the Federal Rules of Civil Procedure, unless otherwise noted.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

1     Agreement outlines a sequence of events leading up to final approval of the

2     settlement. If this Court grants preliminary approval of the settlement, notice will

3     be given to Class Members by First Class U.S. Mail to their last known mailing

4     address. (Settlement Agreement ¶ 44; Exhibit 2; Hawkins Decl. ¶16). After notice

5     is mailed, potential Class Members will have forty five (45) to opt out of or object

6     to the Settlement. (Hawkins Decl., ¶16). At the final approval hearing, the settling

7     parties will ask the Court to approve the Settlement and dismiss this Action with

8     prejudice. When, as here, the parties move for certification and request approval of

9     a settlement at the same time, it is appropriate to combine the certification and

10     settlement notice in order to save costs. (See Rule 23(e)(3).)

11        The law favors settlement. This is particularly true in class actions where

12     substantial resources can be conserved by avoiding the time, cost, and rigors of

13     formal litigation. (*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.

14     1976).) Indeed, strong judicial policy favors the settlement of actions in federal

15     court, particularly where class action litigation is concerned. (*Class Plaintiffs v.*

16     *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); Rule 23(e).) California state

17     courts likewise favor settlement of class actions. (*Errecas v. Superior Court*, 19

18     Cal.App.4th 1475, 1487 (1993).)

19        In reviewing a class action settlement at the preliminary stage, a court

20     undertakes two basic inquiries. "First, the district court must assess whether a class

21     exists…" (*Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).) Stated

22     differently, the court must determine that the lawsuit qualifies as a class action

23     under Rule 23. (*See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir.

24     1998).) In addition, when parties reach a settlement agreement prior to class

25     certification, "courts must peruse the proposed compromise to ratify both the

26     propriety of the certification and the fairness of the settlement." (*Acosta v. Trans*

27     *Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).) Second, the court must

28     determine whether the settlement is "fair, adequate, and reasonable" under Rule

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

1   23(e).  (*Staton*, 327 F.3d at 952.)  This second stage of the approval process occurs

2   after class members have had an opportunity to object to the settlement.

3        Because the court must consider risk factors and the uncertainty of the

4   outcome of the litigation as well as the potential recovery, a proposed class

5   settlement may be fair, just, and reasonable even though it amounts to only a

6   fraction of the potential recovery in a fully litigated case.  (See *Linney v. Cellular*

7   *Alaska P'ship, supra*, 151 F.3d 1234, 1242 (risk of going to trial would have been

8   significant); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)

9   (court found one factor - the financial condition of the defendant - predominated to

10  make clear the district court acted within its discretion).)

11       **A.    The Settlement Reached Merits Class Treatment**

12       In determining the propriety of class certification, a court shall not require

13  plaintiffs to make a preliminary proof of their claims.  Instead, plaintiffs need only

14  show sufficient information to form a reasonable judgment.  (*Blackie v. Barrack*,

15  524 F.2d 891, 901 (9th Cir. 1975); *Baldwin & Flynn v. Nat'l Safety Assocs.*, 149

16  F.R.D. 598, 600 (N.D. Cal. 1993).)  Under this governing standard, the Settlement

17  Class meets the requirements for certification under Rule 23(a) and Rule 23(b)(3)

18  with respect to the settlement reached. [4]  This Court has already considered and

19  approved a settlement in the related *Martinez* case, which contained a similar class

20  definition and allegations, and on which the Settlement in this Action was based.

21       **1.    Numerosity**

22       The first requirement of Rule 23(a) is that the class be so numerous that

23  joinder of all members would be "impracticable." (FRCP 23(a)(1).) The Ninth

24  Circuit has established that "'impracticability' does not mean 'impossibility,' but

25  only the difficulty or inconvenience of joining all members of the class." (*Harris v.*

26  ────────────────

27  [4] Defendants do not oppose certification of a settlement class only for purposes of the Settlement.  In the event that the Settlement is not finally approved, Defendants reserve all

28  rights to contest Plaintiff's right to class certification of his claims.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

1   *Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).)  The total

2   class size is approximately 150 retail managers, all of whom are readily identifiable

3   from Defendant's payroll records. Therefore, the numerosity requirement is

4   satisfied. (Hawkins Decl., ¶6).

5       **2.**   **Commonality**

6       Rule 23(a)(2) requires that there be "questions of law or fact common to the

7   class."  Here, the Settlement Class shares sufficient commonality for settlement

8   purposes in that each was a retail manager employee of Defendant employed in

9   California during the class period and, according to Plaintiff's allegations in the

10  Complaint, share common questions of law and fact, including whether Defendant

11  had a uniform practice of denying overtime, meal and rest breaks, of failing to pay

12  for all hours work, and of failing to provide accurate itemized wage statements.

13  (Hawkins Decl. ¶2).

14      **3.**   **Typicality**

15      Rule 23(a)(3) requires that the representative plaintiff have claims "typical of

16  the claims . . . of the class."  Here, Plaintiff Micahel Sandoval is one of the

17  approximate 150 employees who worked for Defendant as a Retail Manager in

18  California during the class period, and Plaintiff alleges that his claims are similar to

19  the claims of absent class members. (Hawkins Decl. ¶17).

20      **4.**   **Adequate Representation**

21      Rule 23(a)(4) requires that "the representative parties will fairly and

22  adequately protect the interests of the class." Adequate representation turns on

23  whether the named plaintiff and his counsel "have any conflicts of interest with

24  other class members," and whether the named plaintiff and his counsel will

25  "prosecute the action vigorously on behalf of the class." (*Hanlon*, 150 F.3d at

26  1020.)

27      For purposes of the Settlement being proposed as reached between the

28  parties, there are no conflicts of interest between the named Plaintiff Micahel

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

1  Sandoval and the defined class members. (Hawkins Decl. ¶18).

2      In addition, there are no known conflicts with Plaintiff's counsel. (Hawkins

3  Decl., ¶19). Moreover, Plaintiff's counsel, who has represented numerous class

4  members in numerous Class Actions, represents that they can and will adequately

5  represent the class. (*See, Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v.*

6  *Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established

7  by mere fact that counsel were experienced practitioners).) (Hawkins Decl. ¶21).

8      **5.    Predominance of Common Questions**

9      The predominance inquiry focuses on whether the class is "'sufficiently

10  cohesive to warrant adjudication by representation.'" (*Culinary/Bartender Trust*

11  *Fund*, 244 F.3d at 1162.) Central to this question is "'the notion that the

12  adjudication of common issues will help achieve judicial economy.'" (*Zinser v.*

13  *Accufix Research Inst., Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001), *amended*, 273

14  F.3d 1266 (9th Cir. 2001).) Here, under Plaintiff's theory of the case, common

15  questions that can be resolved for all class members include whether they were

16  denied overtime pay, meal and rest breaks, whether they were paid for all hours

17  worked, and whether they were provided accurate itemized wage statements.

18  Defendant disagree that these questions can be resolved on a class-wide basis, but

19  does not oppose certification of a class solely for settlement purposes. (Hawkins

20  Decl., ¶22).

21      **6.    Superiority**

22      To determine whether the superiority requirements of Rule 23(b)(3) are

23  satisfied, a court must compare a class action with alternative methods for

24  adjudicating the parties' claims. Here, as in *Culinary/Bartender Trust Fund*,

25  Defendant denies liability. Additionally, this case, like *Culinary/Bartender Trust*

26  *Fund,* "involves multiple claims for relatively small sums." Furthermore, for

27  purposes of the Class Settlement only, Defendant does not dispute that a class

28  action would be superior to individual lawsuits/settlements, because it allows the

16

1    class members "to pool claims which would be uneconomical to litigate

2    individually." (*See Culinary/Bartender Trust Fund*, 244 F.3d at 1163; *quoting*

3    *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).)  In deciding whether to

4    certify a settlement class action, a district court "need not inquire whether the case,

5    if tried, would present intractable management problems." (*Amchem Prods. Inc. v.*

6    *Woodward*, 521 U.S. 591, 620 (1997).)

7           Here, the factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class

8    certification for settlement purposes:  (1) class members who wish to pursue a

9    separate action can opt out of the Settlement; (2) the parties are unaware of any

10   competing litigation regarding the claims at issue, and (3) the parties agree that it

11   would be desirable to resolve the Plaintiffs' claims in this forum. (Hawkins Decl.,

12   ¶ 23).

13

14          **B.     The Settlement is Fair, Reasonable, and Adequate**

15          No single criterion determines whether a class action settlement meets the

16   requirements of Rule 23(e). The Ninth Circuit has directed district courts to

17   consider a variety of factors without providing an "exhaustive list" or suggesting

18   which factors are most important. (See *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th

19   Cir 2003).)  Such factors include:

20   1.     The strength of the plaintiff's case;

21   2.     The risk, expense, complexity, and duration of further litigation;

22   3.     The risk of maintaining class action status throughout the trial;

23   4.     The amount offered in settlement;

24   5.     The extent of discovery completed, and the stage of the proceedings;

25   6.     The experience and views of counsel;

26   7.     The presence of a government participant; and,

27   8.     The reaction of the class members to the proposed settlement.

28   (*Id*. at 959; *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir 1998);

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

see, e.g., *National Rural Telecomms. Coop. v. DIRECTV, Inc., supra*, 221 FRD at 526-529 (district court analysis of eight factors and approval of settlement as fair, just, reasonable, and adequate).)  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case," (*Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).)

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations, and rough justice.'" (*Officers for Justice*, 688 F.2d at 625.)  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." (*Staton*, 327 F.3d at 961.)  As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.

Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." (688 F.2d at 625.) The Ninth Circuit "will rarely overturn an approval of a class action [settlement] . . . unless the terms of the agreement contain convincing indications that the incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of the negotiations . . . ."(*Staton*, 327 F.3d at 960.)

Here, the parties reached a non-collusive settlement after several months of negotiations, and after sufficient discovery enabled counsel to form educated assessments about the strength of Plaintiff's claims, the validity of Defendant's defenses, and the value of the case.  Moreover, the Settlement in this case is proportionate and based on the settlement previously approved by this Court in the *Martinez* action.  Because obtaining class certification and establishing liability

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

posed difficult hurdles for Plaintiff that justified compromise of his claims, the Settlement falls well within the range of reasonable outcomes and merits approval under Rule 23(e). (Hawkins Decl. ¶24).

### 1. The Risks Inherent in Continued Litigation are Great

To assess the fairness, adequacy, and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation. (*See In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("[T]he present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.") (citation omitted and internal quotation marks); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).)

Here, this factor supports final approval. The Settlement affords the Class Members prompt and substantial relief, while avoiding significant legal and factual obstacles that otherwise may have prevented the Class from obtaining any recovery at all. Indeed, the outcome of class certification, trial and any attendant appeals, are inherently uncertain. In particular, Defendants deny liability for any of the claims asserted by Plaintiff. Moreover, class certification was also far from certain, especially given the current state of the law and the pendency of *Mora v. Big Lots Stores, Inc.*, (2011), 194 Cal. App. 4th 496 and the California Supreme Court's decision in *Brinker Restaurant Corp. v. Superior Court* (review granted October 22, 2008). Thus, the considerable risk that Defendant could defeat certification or that they could prevail on their defenses and defeat any and all recovery to the class warranted a compromise of the class claims. (Hawkins Decl. ¶25).

### 2. The Amount Offered in Settlement Supports Approval

Defendants have agreed to pay up to a maximum amount of $70,000 to settle this lawsuit with the NSA being distributed to Plaintiff Class Members on a pro rata basis. (Hawkins Decl. ¶7). This amount is proportionate to the portion of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

1    *Martinez* settlement allocable to Retail Managers (the position at issue here) given

2    the time period covered by this Action.  (Hawkins Decl., ¶5).  To the extent there is

3    any remainder of the NSA, the remainder is donated and does not revert to

4    Defendant.

5              The Settlement's adequacy must be judged as "'a yielding to absolutes and an

6    abandoning of highest hopes . . . .' Naturally, the agreement reached normally

7    embodies a compromise; in exchange for the saving of cost and elimination of risk,

8    the parties each give up something they might have won had they proceeded with

9    litigation . . .." (*Officers for Justice*, 688 F.2d at 624.)  Therefore, considering the

10   potential recovery, the probability of lengthy litigation in the absence of settlement,

11   and the risks that the Class would not have been certified or been able to succeed at

12   trial and that a jury could award lower damages, the amount of the Settlement is

13   well within the range of reasonableness. (Hawkins Decl. ¶25).

14             **3.     Discovery Supports Approval**

15             The parties engaged in discovery.  Through discovery, Defendants provided

16   Plaintiff's counsel with documents and information sufficient for class counsel to

17   make an informed decision regarding settlement.   (Hawkins Decl. ¶4).

18             These documents and information provided Class Counsel with the facts

19   necessary to effectuate the settlement of this purported class action.  Based on this

20   information, counsel formed educated assessments about the strengths of Plaintiff's

21   claims, the validity of Defendant's defenses, and the value of the case.  Defendant

22   disagrees that these questions can be resolved on a class-wide basis, and also points

23   out that the claims are limited to one year based on the *Martinez* settlement.

24   (Hawkins Decl. ¶4).

25             **4.     Early Payment Supports Approval**

26             This Court also should consider that the Settlement provides for payment to

27   the Class now, rather than a speculative payment, which may not be made until

28   years from now, if at all.  If the litigation were to continue and if Michael Sandoval

20

1  was to prevail, payment would occur at some indeterminate time in the future.

2  Even if Plaintiff were to prevail at trial, Defendant might appeal after all issues are

3  finally resolved in the trial court.  An appeal, of course, might last another year or

4  two, or even more.  If the appellate court were to overturn the verdict, the case

5  might be remanded to the trial court for further proceedings, which, again, could

6  result in additional significant delays.

7        This delay and the risks inherent in continued litigation led Plaintiff to

8  conclude that fighting the lawsuit to the bitter end was not the prudent course. The

9  Settlement calls for payment of settlement monies in the immediate future.  If the

10 litigation continues, the class members may receive nothing or may receive much

11 less at some distant time in the future. (Hawkins Decl. ¶26).

12       **5.      The Fairness of the Distribution Supports Approval**

13       The parties not only believe that the total settlement is fair to the Class, but

14 Micahel Sandoval contends and Defendants do not contest proposed awards not to

15 exceed: $17,500 (25% of the settlement amount) in attorney's fees; $8,500 to the

16 claims administrator, Simpluris, Inc.; $1,000.00 to the LWDA, and $2,000 to the

17 Class Representative to reimburse him for the time, effort, general release and risk

18 demanded by this litigation, are fair and reasonable. (Hawkins Decl. ¶27).

19       The parties believe that the method for determining how much each member

20 should receive possesses the dual advantages of efficiency and fairness.  As

21 discussed above, the plan for allocating and distributing the Settlement to the class

22 members is set forth in detail in the Settlement Agreement.

23

24 **C.      Class Notice/Settlement Share/Election Not To Participate**

25       If the Court conditionally certifies a settlement class and preliminarily

26 approves the settlement, it must direct the "best notice practicable" under the

27 circumstances to the class members.  (FRCP 23(c)(2)(B), 23(e)(1)(B).)  Rule

28 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

1   (*Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).)  Notice need only be given

2   in a manner "reasonably calculated, under all the circumstances, to apprise

3   interested parties of the pendency of the action and afford them an opportunity to

4   present their objections."  (*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

5   306, 314 (1950).)

6            Here, the parties have agreed that notice will be provided by first-class mail

7   to class members, whose last-known names, phone numbers, and addresses are

8   available to Defendants and will be updated prior to mailing based on a National

9   Change of Address search.  (See Settlement Agreement ¶44 (c) (d); See also

10  Exhibit 2 Proposed Class Notice attached to the Declaration of James R. Hawkins.)

11  Apart from the manner of notice, Rule 23(c)(2)(B) also sets forth requirements

12  regarding the content of the notice.  The parties also understand that the notice must

13  concisely and clearly state in plain, easily understood language:

14  1.       The nature of the action;

15  2.       The definition of the class certified;

16  3.       The class claims, issues, or defenses;

17  4.       The filing of a claim;

18  5.       That class member may enter an appearance through counsel if the
             member so desires;

19
20  6.       That the court will exclude from the class any member who requests
             exclusion, stating when and how members may elect to be

21           excluded; and

22  7.       The binding effect of a class judgment on class members under Rule

23            23(c)(3).

24            Here, the proposed notice (Exhibit 2 to Hawkins Decl.) complies fully with

25  Rule 23(c)(2)(B).  Courts routinely approve class notices even when they provide

26  only general information about a settlement.  (*See, e.g., Mendoza v. United States*,

27  623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed

28  settlement" sufficient); *In re* Michael *Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

60 (S.D.N.Y. 1993) (notice "need only describe the terms of the settlement generally"). The class notice drafted by the parties provides more than adequate notice about the Settlement. Class Members thus will be provided with all of the information they need to make an informed choice whether to be part of the Settlement. (Hawkins Decl. ¶28).

## V.

## **FINAL APPROVAL HEARING AND FURTHER SCHEDULING**

The last step in the settlement approval process is the final approval hearing, at which members of the Settlement Class who timely submit objections to the Settlement may be heard, and at which the Court makes a final determination about the propriety of the settlement. (FRCP 23(e)(1).) Based on the timetable for giving notice and submitting objections to the Settlement, the parties request that the fairness hearing in this case be scheduled for on or after December 19, 2011.

## VI.

## CONCLUSION

Based on the above, Plaintiff Micahel Sandoval, individually and on behalf of all Class Members, respectfully requests that this Court grant preliminary approval of the proposed class action settlement reached.

JAMES HAWKINS, APLC

DATED: June 22, 2011           By:/s/ James R. Hawkins
                                    James Hawkins, Esq.
                                    Sean Sasan Vahdat, Esq.
                                    Attorneys for Plaintiff Michael Sandoval
                                    and the Proposed Class

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION